TuRNEY, J.,
delivered the opinion of the majority of the Court, NelsoN, Deaderick and Sneed concurring.
The proceedings in this matter must be dismissed for want of jurisdiction of the County Court, in which they were instituted, over the subject matter.
The petitions were filed under §§ 2312, 2313 and 2314 of the Code, contained in an Article, entitled, Distribution of Estates, in the words:
“Any distributee or legatee of the estate, may, after the expiration of two years from the grant of letters, apply to the County, Circuit or Chancery Court of the county or district in which administration was taken out, to compel the payment of his distributive share or legacy.’
“The application shall be by bill or petition, shall set forth the claim of the applicant as legatee or distributee, shall allege that the assets of the estate are more than sufficient to pay the debts, charges and other claims, if any, entitled to priority, and be verified by affidavit.”
“The proceedings under such application shall be conducted as other equitable actions, and heard and determined summarily as soon as practicable.”
To ascertain whether the petitioners are entitled to pro *458 ceed in this case, under the foregoing sections, we must construe them in conjunction with sections 2315 and 2316, which are:
“An affidavit before a Commissioner of Tennessee, or before any Consul, or Notary Public, as to the pedigree or heirship of any person, may be received as evidence thereof by any executor, administrator, or other person or tribunal having the partition and distribution of property or estates.”
“But every legatee and distributee, before receiving his portion of the deceased’s estate, or some other for him, shall give bond, with two or more able sureties, in a penalty double the amount of his share, payable to the State, conditioned that if any debt or debts, truly owing by the deceased, shall be afterwards sued for and recovered, or otherwise duly made appear, said legatee or distributee shall refund and pay his ratable part of such debt or debts out of the part or share so allotted to him.”
It is evident, from the language of this statute, that it was the purpose of the Legislature to confer upon the County Court merely a power to ascertain, from the records of the Court, of the settlements of the executor or administrator, the condition of the personal estate from, which 'the legacy or distributive share is claimed, and to do this by crediting the trustee with proper disbursements, and charging him with assets in his hands, striking a balance, and then by simple calculation, ascertaining the share of the distributee or legatee, and upon this <to make an order for the payment of the interest thus summarily ascertained.
It could not have been contemplated that the County *459 Court sliould have jurisdiction to construe wills, to try-questions of set off, pass upon complicated accounts between . the executor and distributee or legatee, to try questions of infancy, or other controverted fact, as it must do in this case, if it determine the matter at all. These are matters of litigation, which can not be tried in summary proceeding.
Under this statute, the only power the County Court has, is simply to order the payment of the legacy or distributive share readily ascertained without complication or plausible dispute, and without issue or litigation.
It was not intended that the executor or administrator should answer, with a view to litigate and contest. The petition is only to perform the office of a notice in a summary proceeding, the statute expressly declaring that the proceeding shall be summarily heard, and determined as soon as practicable.
Certainly, if more was intended, or if the jurisdiction indicated by the proceedings in this 'case, had been the object of the Legislature, there would have been more definiteness in the Act of Assembly. It would have provided for process to bring the executor or1, administrator before the court. It would have provided for the enforcement of the liability of his securities upon his bond'. It would have prescribed the term of the court to which the proceeding should have commenced — whether the monthly or quarterly' — and would have invested the Court with the power to issue execution against the executor or administrator and his securities; all of which essentials are absent from the law, and cannot be supplied by intendment or implication. The County Court is one of lim *460 ited, and not general jurisdiction, and it has been the policy as well as the duty of the courts, to confine it to such jurisdiction as the Legislature in terms conferred, and not to enlarge by construction a jurisdiction out of which much ruinous litigation has already resulted. See Bond v. Clay, 2 Head, 379.
This construction of the law is made conclusively correct by section 2315. Can it be for a moment presumed that the Legislature intended to authorize any Court, in matters of contest, to treat as evidence the ex parte affidavit of any one, however honorable or reliable, to ascertain the rights of litigant disputants, without giving the adversary of him who produces such affidavit, the opportunity to test by cross-examination the memory, honesty and means of knowledge of the witness, and at the same time allow the party using such affidavit to produce and rely upon it at the trial, without having first filed it in the cause, or given his adversary notice of its existence, that he might be enabled to explain it by the counter affidavit of the same party, or show its falsity by proof almnde. Surely, no law-making power in this country ever contemplated such*doctrine; or, if it did, it had no power for its institution, and to have declared it in plain terms would have been to transcend its authority and promulgate a nullity through the statute book; it being the peculiar theory of our institutions to arrive at truth in all matters of disputed or contested right by thorough investigation, each party being secured in the inalienable privilege of testing the proof for and against him, and of unveiling the falsehood that may be attempted to be practiced upon him.
*461 The law limiting executors and administrators under ordinary circumstances, to two years for the settlement of estates, and for that time and purpose allowing them to retain the effects of decedents, the idea then controlling the Legislature was, that it was but simple justice that at the end of that period the persons eventually entitled to the residue of estates after the payment of debts, should, instead of the representative, have the use and profits of such remaining estate, upon executing the refunding bond directed by section 2316. The law contemplates the use, and not the absolute ownership of the fund by the legatee or distributee; such use to ripen into absolute ownership, by the final settlement of the estate without the aid of the fund, or by the lapse of such time as will bar creditors from enforcing demands against the representative.
This view of the law and the purpose of the Legislature, if it needs strength, finds it in sections 2295 and 2311 of the Code. The first provides: “After the lapse of two years from the qualification of every executor or administrator, the Clerk of the County Court shall take and state his accounts, and once every year' thereafter till the administration is closed.” The last enacts: “No executor or administrator shall take, hold or retain in his hands, more of the estate of the deceased than amounts to his necessary charges and disbursements, and such debts as he shall legally pay within two years after administration granted, but all such estate so remaining, shall, immediately after the expiration of two years, be divided and paid over to the person or persons to whom the same may be due by law, or by the will of the deceased.”
By section 2295, we have the express order of law *462 for the taking and stating of the accounts of the executor or administrator immediately upon the expiration of the two years; and by 2311 the direct enactment for the payment, immediately, of the remaining estate to the persons entitled; the language of all these several sections being capable, by no construction, of giving to the County Court any other jurisdiction than that we have indicated, to be exercised in a summary way. The word, “summarily,” used in the statute, should be construed in the same sense in which it is used in motions against Sheriffs, Clerks, etc., when the balances are readily ascertained from the record or execution.
The requirement of refunding bonds in all cases, was suggested by the fact that estates are frequently not wound up by executors or administrator’s for years after the expiration of the two years, because of the pending of suits. The mention of the Circuit and Chancery Courts in the same sections can not affect the question, as the Chancery Court has jurisdiction, independent of the statute. This construction harmonizes the jurisdiction of the different courts. It was intended to simplify the remedy in cases, the justice of which was beyond controversy, and that the Circuit and County Courts should have jurisdiction in cases where there is no litigation, to direct a simple payment. From the nature of its organization, and its general and inherent jurisdiction, always exercised by a court of chancery, it is manifest the Legislature did not intend that cases of complication and difficulty or dispute in the settlement of estates should be determined elsewhere than in that forum expressly created and qualified for that purpose.
*463 The case before us exemplifies and amplifies the bad policy of a liberal or enlarging construction of statutes giving jurisdiction to County Courts in matters of complication. Here we have two petitions and three petitioners, each claiming a specific legacy; one that she is entitled to two notes of two hundred and fifty dollars each. The executor answers that she is not entitled to the notes, but merely to the proceeds, or so much thereof as he can collect. That this is the meaning of the will, which is right, or whether either is, we are unable to say, the will not being part of the record before us. To the second he says, I must have credits on your legacy of one hundred dollars; and to the third, who comes into court on his separate petition, but asks to be, and is, made party to the first, and who says he was paid his legacy of one hundred dollars in Confederate money when he was a minor, and therefore is not bound by it; the executor says he denies the minority, and that petitioner’s brother signed a paper as his security that he would be bound by the payment, and he asks to have these matters inquired into. Orders of reference to the Clerk for accounts are had, but by some means unexplained, the two first petitioners, and their claims are lost sight of, and we have before us only the party who is contesting his age and the Confederate money payment with the executor.
The proceedings as to the petitioner before this court are dismissed, he paying his costs, and the executor those of his answer and proof.